**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FELIX FLORES RIOS, AKA Alex Miguel Reyes, AKA Alex Rios, AKA Miguel Rios, AKA Miguel Flores Rios, *Petitioner*, | No. 12-72551 Agency No. A200-244-399 |
| v. | OPINION |
| LORETTA E. LYNCH, Attorney General, *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 23, 2015[*]
Filed December 1, 2015

Before: Sidney R. Thomas, Chief Judge and Michael Daly
Hawkins and M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

Concluding that the Board of Immigration Appeals erred by failing to consider petitioner's claim for withholding of removal based on his family's opposition to a Guatemalan gang, the panel denied in part and granted in part the petition for review, and remanded for further consideration.

The panel held that substantial evidence supported the Board's determination that because petitioner had never been threatened or harmed due to his religious affiliation and did not engage in proselytizing efforts, there was little likelihood that he would be persecuted as a result of his religious beliefs.

Applying the revised framework for social group membership espoused by the Board in *Matter of M-E-V-G-,* 26 I. & N. Dec. 227 (B.I.A. 2014), the panel stated that membership in a particular social group must now show that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question. The panel explained that the new social distinction prong of the social group analysis refers to social recognition and requires that a group be perceived as a group by society, in contrast to the en banc majority's focus on the perception of the persecutor in *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1087 (9th Cir. 2013) (en banc). The panel stated that even under this revised

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

framework, the family remains the quintessential particular social group.

The panel held that the Board erred by failing to address petitioner's claim that he is a member of a social group made up of his family and that he risks persecution by a gang because of its vendetta against his family. The panel remanded for further proceedings.

## COUNSEL

Mardy M. Sproule, Law Offices of Mardy M. Sproule, Commerce, California, for Petitioner.

Stuart F. Delery, Acting Assistant Attorney General, Civil Division; Jennifer L. Lightbody, Senior Litigation Counsel; Robbin K. Blaya, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

McKEOWN, Circuit Judge:

This appeal requires us to consider the meaning of "membership in a particular social group" in the context of withholding of removal proceedings under the immigration laws. Providing a precise definition for this inherently flexible term, which is not defined in the legislation, has long bedeviled those tasked with adjudicating asylum and withholding claims. In recognition of these semantic difficulties, the Board of Immigration Appeals ("Board" or "BIA") recently clarified the criteria for assessing social group claims. *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (B.I.A. 2014). Under the Board's refined test, to establish eligibility for withholding on the basis of "membership in a particular social group," a petitioner must show that the group is (1) comprised of individuals who "share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id*. at 237.

Felix Flores-Rios made such a claim. Before the BIA, he argued that he faced persecution in his native Guatemala both because of a gang vendetta targeting his family—a cognizable "particular social group"—and because of his Evangelical Christian faith. Focusing exclusively on Flores-Rios's religious claims, the BIA rejected the appeal.

## BACKGROUND

Flores-Rios petitions for review of the BIA decision affirming the denial of his application for asylum,

withholding of removal and protection under the Convention Against Torture ("CAT").[1]

Flores-Rios entered the United States without inspection on September 10, 2007. On June 15, 2009, gang members killed his father outside of his father's Evangelical Christian church in Guatemala. Flores-Rios's cousin, Karine Faviola Flores-Aguillar, witnessed the murder and agreed to testify against the perpetrators. She was murdered the day before the hearing. Flores-Rios asserts that she was killed in retaliation for her willingness to cooperate with the authorities and to prevent her appearance as a witness against the gang members who killed his father. In the wake of Flores-Aguillar's death, Flores-Rios's sister began receiving threats, even though she had neither witnessed the attack on her father nor agreed to testify against the gang members responsible. Due to these threats, she felt compelled to flee to the United States.

Before the IJ, Flores-Rios argued that he and his family were persecuted for their Evangelical faith and that he feared persecution in Guatemala on the basis of his religion. Flores-Rios also claimed that his cousin was murdered and his family threatened in part because of their refusal to "declare the innocence" of those responsible for his father's murder.

---

[1] The BIA affirmed the Immigration Judge's ("IJ") determination that Flores-Rios's asylum claim was time-barred because he failed to either apply within one year of his arrival or meet any of the exceptions to the one-year rule pursuant to 8 U.S.C. § 1158(a)(2)(B). On appeal to this court, Flores-Rios abandoned his claims for asylum and CAT protection by not addressing them with any specificity in his briefs. *See Aguilar-Ramos v. Holder*, 594 F.3d 701, 703 n.1(9th Cir. 2010) (citing *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not supported by argument are deemed abandoned.")).

The IJ rejected Flores-Rios's religious claims, referencing a newspaper article introduced by Flores-Rios, which described his father's murderers as members of a local gang "dedicated to killing and collecting a tax from local businesses." The IJ found that violence and witness intimidation—not religious persecution—led to the murders of Flores-Rios's relatives. The IJ further noted a then-pending Ninth Circuit en banc decision, *Henriquez-Rivas v. Holder*, which related to whether witnesses against gangs could qualify as members of a particular social group for purposes of establishing withholding eligibility.[2] The IJ concluded that, regardless of the outcome of the en banc decision, *Henriquez-Rivas* would be inapplicable because Flores-Rios did not witness the murders and thus would not be called to testify against the culpable parties.

On appeal to the BIA, Flores-Rios reiterated his religious persecution argument and also claimed that he feared persecution based on his family's opposition to the Guatemalan gang that killed his father and cousin. Specifically, he argued that the gang had threatened members of his family in order to dissuade them from supporting the prosecution of the murderers and that he was at risk because of his familial affiliation. The BIA dismissed the appeal, agreeing with the IJ that Flores-Rios had established neither a link between his father's murder and his father's faith nor a "clear probability of persecution on account of his religion." The BIA did not address Flores-Rios's contention that he would be persecuted in Guatemala as a result of his family's opposition to the gang.

---

[2] *Henriquez-Rivas* was decided one year after the IJ denied Flores-Rios's application. 707 F.3d 1081 (9th Cir. 2013) (en banc).

## ANALYSIS

This case turns on whether Flores-Rios established a likelihood of persecution either because of his religion or his membership in a cognizable particular social group. Because the BIA erred in failing to address his claims of persecution due to his family's opposition to a local gang, we remand for consideration of Flores-Rios's social group claim.

Flores-Rios tied his claims of religious persecution to the threats and abuse allegedly suffered by his family due to their Evangelical Christianity. The BIA concurred in the IJ's analysis that Flores-Rios failed to establish a sufficient nexus between the murders of his relatives and their religious beliefs. The BIA also agreed with the IJ's conclusion that, because Flores-Rios had never been threatened or harmed due to his religious affiliation and did not engage in proselytizing efforts, there was little likelihood that he would be persecuted as a result of his religious beliefs. Substantial evidence supports the BIA's conclusions. *See Cordoba v. Holder*, 726 F.3d 1106, 1113 (9th Cir. 2013) (The BIA's "purely factual determinations" are reviewed only for "substantial evidence.").

However, our analysis does not end there. The crux of this appeal is Flores-Rios's claim for withholding of removal due to persecution on the basis of his membership in a particular social group—his family. Despite the government's argument to the contrary, Flores-Rios raised this claim in his brief to the Board. In so doing, he properly exhausted his administrative remedies. *See Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (explaining that to exhaust an asylum claim, an applicant must put the BIA on notice by raising any issues in the notice of appeal or in the briefs).

Before the IJ, Flores-Rios claimed that his cousin had agreed to testify against his father's killers, but was murdered a day before the hearing. After his cousin's murder, Flores-Rios's sister began receiving threats, even though she had not witnessed the murders and was not cooperating in the prosecution of the murderers. The IJ made no adverse finding as to Flores-Rios's credibility and expressly acknowledged that the murders were apparently motivated by gang violence and witness intimidation. The IJ went on to note that Flores-Rios could not establish a claim based on membership in a social group comprised of witnesses against gangs, because he had not witnessed the murders and thus could not testify.

The IJ's characterization misapprehended Flores-Rios's complaint—he does not claim to be a member of a social group comprised of witnesses against gangs. Rather, he asserts that he is a member of a social group made up of his family and that he risks persecution by the gang because of its vendetta against his family. The BIA did not address this social group claim—a failure that constitutes error and requires remand. *See Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) (The BIA is "not free to ignore arguments raised by a petitioner."). A short history of the evolving definition of the term "particular social group" is useful at this stage of the proceedings, particularly in light of the risk that Flores-Rios's social group claim might once again be misconstrued on remand.

"Membership in a particular social group" is an enigmatic and difficult-to-define term. *Donchev v. Mukasey*, 553 F.3d 1206, 1215–16 (9th Cir. 2009). In the seminal case addressing the phrase, the BIA determined that a cognizable "particular social group" must consist of "persons all of

whom share a common, immutable characteristic," including innate qualities "such as sex, color, or kinship ties . . . ." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985), *overruled on other grounds*, *Matter of Mogharrabi*, 19 I. & N. Dec. 439 (B.I.A. 1987).

Over time, the flexible nature of the common, immutable characteristic test created "confusion and a lack of consistency" among the judges tasked with adjudicating asylum and withholding claims. *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 231 (B.I.A. 2014). In 2006, responding to calls from the circuit courts for greater clarity regarding the framework for determining the existence of a "particular social group," the BIA adopted the "social visibility" requirement. *Matter of C-A-*, 23 I. & N. Dec. 951, 959 (B.I.A. 2006). "Social visibility" focused on whether the group in question was "easily recognizable and understood by others to constitute [a] social group[]." *Id.* Thus, for example, the BIA concluded that confidential informants against Colombian drug cartels could not be members of a "particular social group" because "the very nature of the conduct at issue is such that it is generally out of the public view," such informants necessarily lacked the requisite social visibility. *Id.* at 960.

Despite the BIA's elaboration of "social visibility," the illusive nature of the requirement spawned inter-circuit disagreement. *Henriquez-Rivas*, 707 F.3d 1081, 1087 (9th Cir. 2013) (en banc). In *Henriquez-Rivas*, we wrote that social visibility required that members of a proposed group "be perceived as a group by society." *Id.* at 1088–89 (citations omitted). Henriquez-Rivas's proposed social group—comprised of individuals who testified in open court against gang members—met the social visibility requirement,

because an informant who testifies in open court against gang members is, by definition, "highly visible and recognizable," and because Salvadoran society had acknowledged the "unique vulnerability" of those who testify against gang members by enacting protective legislation to safeguard those witnesses. *Id.* at 1092 (citation omitted).

A majority of the en banc court elaborated that "in the context of persecution, we believe that the perception of the persecutors may matter the most." *Id.* at 1089. As noted in the concurrence, however, "[d]efining social visibility from the perspective of society [not the perpetrator] better comports with the case law" and "also makes common sense." *Id.* at 1094 (McKeown, J., concurring). In the end, our conclusion that the persecutor's perception matters most in determining whether a claim satisfied the social visibility requirement was unnecessary to our decision.

In the wake of *Henriquez-Rivas*, the BIA revisited the framework for assessing claims based on social group membership and recast the "social visibility" requirement as one of "social distinction." *Matter of M-E-V-G-,* 26 I. & N. Dec. 227, 240 (B.I.A. 2014). The new "social distinction" prong of the social group analysis "refers to social recognition" and requires that a group "be perceived as a group by society." *Id.* The BIA further clarified that recognition of a particular social group "is determined by the perception of the society in question, rather than by the perception of the persecutor." *Id.* at 242. This approach contrasts with the en banc majority's focus on the perpetrator in *Henriquez-Rivas*, and comports with the above-referenced concurrence. Under the BIA's revised rubric, an applicant for withholding on the basis of membership in a particular social group must now show that the group is "(1) composed of

members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id.* at 237.

Even under this refined framework, the family remains the quintessential particular social group. *See id.* at 240, 247 (citing with approval prior decisions finding the family easily recognizable and perceived by others as a social group). In *Thomas v. Gonzales*, we held "that family membership may constitute membership in a 'particular social group,' and thus confer refugee status on a family member who has been persecuted or who has a well-founded fear of future persecution on account of that familial relationship." 409 F.3d 1177, 1180 (9th Cir. 2005) (en banc), *vacated on other grounds*, *Gonzales v. Thomas*, 547 U.S. 183 (2006). We also recognized that persecutors are more likely to identify individual family members as part of a particular social group when familial ties are "linked to race, religion, or political affiliation." *Id.* at 1188. We declined to hold, however, "that a family can constitute a particular social group only when the alleged persecution on that ground is intertwined with" another protected ground. *Id.*

Our sister circuits similarly recognize the family as a "particular social group." *See, e.g.*, *Crespin-Valladares v. Holder*, 632 F.3d 117, 125 (4th Cir. 2011) ("[E]very circuit to have considered the question has held that family ties can provide a basis for asylum."); *Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009) ("[M]embership in the same family [] is widely recognized by the caselaw."); *Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993) ("There can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family."). The Fourth Circuit's decision in

*Crespin-Valladares* is illustrative here. In *Crespin-Valladares*, the petitioner claimed that family members of witnesses who agreed to testify against gang members and who "suffer[ed] persecution on account of their family ties" constituted a cognizable social group. 632 F.3d at 125. The court pointed out that the BIA had misconstrued this group as "those who actively oppose gangs . . . by agreeing to be prosecutorial witnesses." *Id.* Because few groups are more "readily identifiable than the family," the BIA's determination that the petitioner had not shown membership in a particular social group "was manifestly contrary to law." *Id.* at 126.

In the face of Flores-Rios's social group claim and the evidence that gang members killed Flores-Rios's father, murdered his cousin and threatened his sister, the BIA erred in not addressing the family aspect of Flores-Rios's social group claim.

Accordingly, the petition for review is **DENIED** in part and **GRANTED** in part. The BIA's decision is **VACATED AND REMANDED** for further proceedings.

Each party shall bear its own costs on appeal.