**NOT FOR PUBLICATION**



**FILED**

JUL 02 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESUS VILLA-MERAZ, AKA Isidro Cruz Silva,<br><br>　　　　　Petitioner,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br><br>　　　　　Respondent. | No. 17-70100<br><br>Agency No. A079-767-615<br><br>**MEMORANDUM**[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 11, 2019
Seattle, Washington

Before:  W. FLETCHER, CALLAHAN, and CHRISTEN, Circuit Judges.

Jesus Villa-Meraz petitions for review of the Board of Immigration Appeals'

("BIA") decision affirming the Immigration Judge's ("IJ") denial of his application

for asylum, withholding of removal, and protection under the Convention Against

Torture ("CAT").  We have jurisdiction pursuant to 8 U.S.C. § 1252.  We deny the

---

　　　　*　　　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

petition as to the asylum claim, and grant the petition as to the withholding of removal and CAT claims.

"We examine the BIA's legal conclusions de novo and its factual findings for substantial evidence." *Parada v. Sessions*, 902 F.3d 901, 908 (9th Cir. 2018) (internal quotation marks omitted); 8 U.S.C. § 1252(b)(4)(B). "Where, as here, the BIA has reviewed the IJ's decision and incorporated portions of it as its own, we treat the incorporated parts of the IJ's decision as the BIA's." *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002).

### 1. Asylum and Withholding of Removal

To qualify for asylum, an applicant must establish persecution or a well-founded fear of persecution on account of a protected ground. *Parada*, 902 F.3d at 909. The protected ground must be "at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(I); *see Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009).

To qualify for withholding of removal, an applicant must establish a "clear probability" that he would be subject to persecution on account of a protected ground. *Chen v. Ashcroft,* 362 F.3d 611, 617 (9th Cir. 2004). In contrast to asylum, applicants for withholding of removal must simply establish that a protected ground was "*a* reason" they were persecuted; the protected ground does

2

not have to be the only reason or "a *central* reason" they were persecuted. *Barajas-Romero v. Lynch*, 846 F.3d 351, 358–59 (9th Cir. 2017); *Ayala v. Sessions*, 855 F.3d 1012, 1015, 1021 (9th Cir. 2017).

Here, the agency correctly found that Villa-Meraz suffered harm that rose to the level of persecution and that his proposed protected grounds—membership in his family and imputed political opinion—constituted protected grounds. *See, e.g.*, *Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015); *Molina-Estrada*, 293 F.3d at 1095. But the agency concluded that Villa-Meraz did not establish nexus between his persecution and these protected grounds. This determination is not supported by substantial evidence.

Villa-Meraz's brother, Manuel, was an elected official in Mexico. While in office, Manuel refused to cooperate with the cartel. Substantial evidence shows Manuel was kidnapped and murdered by the cartel soon after he announced he was running for president of the municipality. He was running against a candidate who was backed by the cartel. Villa-Meraz's mother witnessed the kidnapping, and Manuel's body was later found dumped in a ditch with wounds consistent with having been beaten and shot multiple times. Country condition reports also support that Manuel was killed for political reasons. The cartel has a history of murdering elected officials and candidates for office. It is and was common for the

3

cartel to murder political candidates and influence elections in Michoacán—both prior to 2011, during 2011, and after 2011.

Substantial evidence shows that, a little over a year later, Villa-Meraz's brother-in-law, Jesus Manuel, was murdered by the cartel as he sat in his car outside a local grocery store. Villa-Meraz, Manuel, and Jesus Manuel worked together both during and after Manuel's term in elected office. They were frequently seen together in public. Jesus Manuel also supported Manuel's political activities.

After Manuel was killed, Villa-Meraz fled to the countryside. A little over a year and a half later, substantial evidence shows Villa-Meraz was kidnapped by the cartel soon after he was stopped by the police and identified himself. The cartel beat him and held him captive for 1.5 months. The cartel knew to contact his sister to request ransom money. He was released after his sister paid the requested ransom money. The cartel told him they would kill him if they saw him again. The cartel told him not to tell the government or the police that he was kidnapped because the government and the police worked for the cartel, so the cartel would find out about the report and kill him and his family.

Villa-Meraz's credible testimony; the credible written declarations submitted by his family members; the documentary evidence he submitted, including a

newspaper article regarding his brother-in-law's murder, photographs of Villa-Meraz's injuries, and certificates related to his brother's political office; and the country condition reports compel a conclusion that Villa-Meraz's brother Manuel was killed by the cartel due to his political opinion, that Villa-Meraz's brother-in-law Jesus Manuel was killed by the cartel due to his relationship to Manuel, and that Villa-Meraz was kidnapped, beaten, and held for 1.5 months by the cartel due, at least in part, to his family membership. But the record also establishes that Villa-Meraz's kidnapping was motivated by financial gain because the kidnappers sought a ransom. Therefore, we hold that the record compels a conclusion that Villa-Meraz's family membership was "a reason" he was persecuted, but not "a central reason" he was persecuted. Accordingly, we affirm the agency's denial of Villa-Meraz's application for asylum and humanitarian asylum, hold that Villa-Meraz established a "clear probability" that he would be subject to persecution on account of a protected ground, and reverse the agency's denial of his application for withholding of removal. We remand for the agency to grant withholding of removal.

*2. Protection under the Convention Against Torture*

"To obtain relief under CAT, a petitioner must prove that it is more likely than not that he or she will be tortured in the country of removal." *Parada*, 902

F.3d at 914; 8 C.F.R. § 1208.16(c)(2). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *see also Garcia-Milian v. Holder*, 755 F.3d 1026, 1033 (9th Cir. 2014) (Protection under CAT "requires a two part analysis—first, is it more likely than not that the [individual] will be tortured upon return to [their] homeland; and second, is there sufficient state action involved in that torture."). "CAT's implementing regulations explicitly require the agency to consider 'all evidence relevant to the possibility of future torture,' and we have repeatedly reversed where the agency has failed to do so." *Parada*, 902 F.3d at 914–15; *Haile v. Holder*, 658 F.3d 1122, 1131 (9th Cir. 2011).

Here, substantial evidence does not support the agency's denial of Villa-Meraz's application for protection under CAT. The BIA "affirm[ed] the Immigration Judge's denial of [Villa-Meraz's] application for protection under the CAT (I.J. at 19–20)." In so affirming, the BIA stated that "the respondent did not submit any evidence to establish that it is more likely than not that anyone in Mexico would single him out for torture in the event of his return." This finding is not supported by substantial evidence. Villa-Meraz's credible testimony, declarations, photographs, and other evidence compel a conclusion that he was tortured in the past. *See* 8 C.F.R. §§ 208.18(a)(1), 1208.18(a)(1) (defining torture).

6

The record also compels a conclusion that Villa-Meraz faces a particular threat of torture in the future. The cartel targeted Villa-Meraz's family members in the past and threatened to kill him if they saw him in the future.

In addition, the BIA found that Villa-Meraz did not show that "any public official or other person acting in an official capacity would acquiesce" to his torture. But this finding is not supported by substantial evidence. Villa-Meraz was only kidnapped by the cartel after the police identified him. The country conditions reports and exhibits submitted by Villa-Meraz indicate widespread corruption of local government officials and that local government officials acquiescence in—and even actively participate in—the violence, kidnappings, and murders perpetrated by the cartels. Villa-Meraz's testimony, written declaration, and the declarations he submitted from others also indicate the widespread corruption of local government officials and their connections to and involvement with the cartel. *See Parada*, 902 F.3d at 916 ("[W]e have held that the acquiescence standard is met where the record demonstrates that public officials at any level—even if not at the federal level—would acquiesce in torture the petitioner is likely to suffer."); *Madrigal v. Holder*, 716 F.3d 499, 509–10 (9th Cir. 2013) ("[A]n applicant for CAT relief need not show that the entire foreign government would consent to or acquiesce in his torture."). We reverse the

7

agency's decision and hold that Villa-Meraz is entitled to protection under CAT. We remand for the agency to grant CAT deferral relief. *See Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1082 (9th Cir. 2015) ("'[U]nder the ordinary remand rule, we are not permitted to decide a claim that the immigration court has not considered in the first instance. But here, the BIA has already fully considered [the petitioner's] CAT claim." (internal citation omitted)).

**PETITION DENIED IN PART, GRANTED IN PART, and REMANDED.**

*Villa-Meraz v. Barr*, No. 17-70100

Callahan, J., concurring in part and dissenting in part:

I agree with the majority's disposition of Villa-Meraz's asylum and withholding of removal claim, but dissent from the holding that Villa-Meraz is entitled to protection under the CAT.  Rather, I would remand the CAT issue to the agency for further proceedings.

In denying Villa-Meraz's CAT claim, the BIA cursorily concluded that Villa-Meraz failed to present "any evidence" that he would be singled out for torture and failed to establish that public officials would acquiesce in his torture. In doing so, the BIA erred by failing to consider all relevant evidence as required by the CAT's implementing regulations, and by construing the "government acquiescence" standard too narrowly in light of *Parada v. Sessions*, 902 F.3d 901 (9th Cir. 2018), and *Madrigal v. Holder*, 716 F.3d 499 (9th Cir. 2013).  The appropriate remedy for these errors, however, would be a remand for reconsideration of the CAT claim, rather than a conclusive determination on our part.  This is particularly true because the BIA, in addressing Villa-Meraz' entitlement to relief under the CAT, did not expressly reach whether his claims even rise to the level of torture.[1]  Although the BIA found that his harms rose to the

---

[1] The IJ made a specific finding that "the past harm . . . [was not] sufficient to constitute torture," but the BIA did not expressly adopt any of the IJ's reasons for denying CAT relief.  Rather, the BIA provided its own independent reasons for

1

level of persecution for the purposes of his asylum and withholding claims, torture under the CAT is defined by a different standard that is much more difficult to meet. *See* 8 C.F.R. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."). Even if we personally think that Villa-Meraz has established a clear probability of future harms rising to the level of torture,[2] that is not our decision to make given the BIA's deficient analysis here. *See Azanor v. Ashcroft*, 364 F.3d 1013, 1021 (9th Cir. 2004) ("[W]e must decide whether to grant or deny the petition for review based on the Board's reasoning rather than our own independent analysis of the record."); *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its

---

denial of the CAT claim, which depart substantively from the specific findings and reasons proffered by the IJ. Thus, our review of the agency's denial of Villa-Meraz's CAT claim is limited to the BIA decision. *See Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (stating that where the "BIA conduct[s] its own review of the evidence and law rather than simply adopting the immigration judge's decision," this court's review "is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." (citation and internal quotation marks omitted)).

[2] In reviewing the totality of the evidence in the record, I am uncertain that it *compels* the conclusion that Villa-Meraz established a *clear probability* of torture if he returns to Mexico. We need not reach this ultimate issue, however, because the BIA's own analysis was incomplete.

reasoning, we must remand to allow the agency to decide any issues remaining in the case.").

Protection under the CAT is granted only in extreme cases given the difficult legal standard that applicants must overcome to warrant relief.[3] I see no reason for us to usurp the agency's role by ordering CAT relief in the first instance, particularly given the circumstances in this case. Considering that we all agree to Villa-Meraz's entitlement to withholding of removal under the INA, he faces no immediate harm from a remand that allows the agency to address its overly conclusory analysis of his CAT claim. As we did in the cases cited by the majority, *Parada*, 902 F.3d 901, and *Madrigal*, 716 F.3d 499, we should remand for agency reconsideration of Villa-Meraz's entitlement to relief under the CAT.

---

[3] In 2017, less than 2% of all CAT applications were granted relief. *See* U.S. Dep't of Justice, Exec. Office of Immigration Review, Statistics Yearbook Fiscal Year 2017, 30 (2017), *available at* https://www.justice.gov/eoir/page/file/1107056/download.