**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 12 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SONIA YIRLEY NAVAREZ-GARZON,* | No. 19-70972 |
| Petitioner, | Agency No. A215-674-663 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM** |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 13, 2020***
Pasadena, California

Before: WARDLAW, COOK,**** and HUNSAKER, Circuit Judges.

Sonia Narvaez-Garzon challenges the Board of Immigration Appeals' denial

of her application for asylum, withholding of removal, and protection under the

---

\* The official caption misspells Narvaez-Garzon's surname as "Navarez-Garzon." *See* AR 64. We adopt the correct spelling here.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\*\* The Honorable Deborah L. Cook, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Convention Against Torture ("CAT"). We **DENY** in part and **DISMISS** in part the petition for review.

A citizen of Colombia, Narvaez-Garzon entered the United States without authorization in 2018. The Department of Homeland Security apprehended her and initiated removal proceedings. The immigration judge ("IJ") found Narvaez-Garzon removable, but Narvaez-Garzon applied for asylum, withholding of removal, and CAT protection. In her application, she stated that a guerilla commander in Colombia raped her and that she gave birth to a daughter as a result. She alleged that when the commander learned about the daughter fifteen years later, he threatened to kill Narvaez-Garzon, abducted the child for several months, and murdered Narvaez-Garzon's aunts, uncles, and cousins.

After cataloguing numerous instances of inconsistent, nonresponsive, and implausible testimony, and noting Narvaez-Garzon's "evasive" demeanor and lack of corroborating evidence, the IJ found her narrative not credible and denied her application for asylum and withholding of removal. The IJ alternatively held that—even assuming credibility—Narvaez-Garzon failed to show she suffered persecution or reasonably feared persecution due to membership in a particular social group, a necessary prerequisite to asylum and withholding-of-removal relief here. Finally, the IJ determined that Narvaez-Garzon could not establish eligibility for CAT protection because she did not show that she was more likely than not to be tortured

2

if returned to Colombia or that the Colombian government would acquiesce in her torture. On appeal, the Board sustained the IJ's alternative holding without reaching the IJ's credibility finding. Narvaez-Garzon now seeks review of the Board's order and moves to stay removal.

*Asylum.* Narvaez-Garzon argues that the IJ erred in finding her testimony supporting asylum not credible. She did not challenge the IJ's credibility finding to the Board, however, and the Board deemed it unnecessary to reach the IJ's adverse credibility finding. It instead dismissed Narvaez-Garzon's appeal on the ground that she failed to show past persecution or a well-founded fear of future persecution on account of a protected ground. We lack jurisdiction to address Narvaez-Garzon's unexhausted arguments contesting the IJ's credibility determination and dismiss that portion of the petition. *Barron v. Ashcroft*, 358 F.3d 674, 677–78 (9th Cir. 2004).

*CAT protection.* We similarly lack jurisdiction to review Narvaez-Garzon's CAT claim because she "d[id] not apprise" the Board of any error in the IJ's decision. AR 3; *see Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1079–80 (9th Cir. 2013); *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004) ("A petitioner cannot satisfy the exhaustion requirement by making a general challenge to the IJ's decision, but, rather, must specify which issues form the basis of the appeal."). We cannot consider Narvaez-Garzon's unexhausted contentions about CAT protection and dismiss that portion of the petition. *Tijani v. Holder*, 628 F.3d 1071, 1080 (9th

3

Cir. 2010).

*Withholding of removal.* To qualify for withholding of removal, an applicant must show a threat to her life or freedom in the proposed country of removal "on account of" a protected ground. 8 C.F.R. § 1208.16(b). Narvaez-Garzon alleged that she feared persecution in Colombia because of her membership in several "particular social groups" including: "family member[s] of [her daughter] Yiosy Daniela Narvaez Garzon[,] people who report guerrilla authorities to the police in Colombia, and mothers of [] children who are products of rape by guerrilla authorities in Colombia, and . . . members of [the] Narvaez Garzon [family.]" AR 229. Even assuming that those groups are cognizable, Narvaez-Garzon does not challenge the agency's finding that she failed to prove persecution *on account of* membership in those groups. *See* AR 3 ("[Narvaez-Garzon] did not show past persecution or a clear probability of future persecution *on account of* a protected ground.") (emphasis added). That unchallenged finding renders Narvaez-Garzon ineligible for withholding-of-removal relief. 8 C.F.R. § 1208.16(b).

*Due process.* Before her evidentiary hearing (and again during it), Narvaez-Garzon asked the IJ for a continuance while she sought translations of certain documents and waited for family members to send additional supporting evidence. Because Narvaez-Garzon already had almost four months to compile this evidence, the IJ declined to postpone the proceedings. Narvaez-Garzon contends that the IJ's

4

decision deprived her of due process.

"A due process violation occurs where (1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting h[er] case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (internal quotation marks and citation omitted). Narvaez-Garzon testified that she needed more time to receive evidence from Colombia and Ecuador and to translate death certificates and a letter from the Colombian government. But she fails to explain how those materials would assist her. *Araiza v. Barr*, 771 F. App'x 791, 792 (9th Cir. 2019) (holding that "Araiza has not shown how the denial of the continuance violated her rights or caused her prejudice . . . [where] she does not explain what relevant information [the document] would have contained, or how it would have differed from her in-hearing testimony or changed the outcome of her immigration proceeding").

Assuming that the missing materials would have rehabilitated her not-credible testimony, Narvaez-Garzon still cannot show prejudice. Recall that the IJ entered an alternative determination, assuming credibility, which the Board affirmed. Additional evidence of credibility thus has no bearing on the validity of the IJ's alternative determination.

Arguing that the IJ abused her discretion in denying the continuance and that

5

our conclusion about prejudice is "unsupported," the dissent relieves the petitioner of her burden of persuasion, unearthing various unbriefed facts and arguments supporting Narvaez-Garzon. *See generally* Dissenting Op.; *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000) (noting the petitioner's burden to establish a due process violation). Narvaez-Garzon's one-paragraph invocation of due process, which cites no authority and conducts no analysis beyond labelling the circumstances "unfair," falls well short. Though sympathetic to Narvaez-Garzon's plight, we must focus on the facts, issues, and arguments as presented by the parties. *See Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."). That principle of judicial restraint is especially important when, as here, the respondent has no opportunity to respond to the judicially developed arguments presented in the dissent.

We **DENY** in part and **DISMISS** in part the petition. The temporary stay of removal confirmed by Ninth Circuit General Order 6.4(c) shall continue in effect until issuance of the mandate. *See Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 856 (9th Cir. 2004).

*Navarez-Garzon v. Barr*, No. 19-70972

WARDLAW, Circuit Judge, dissenting:

I respectfully dissent. The Immigration Judge (IJ) violated due process by denying Narvaez-Garzon, a pro se petitioner, her first reasonable request for a continuance.

On September 6, 2018, an IJ first explained to Narvaez-Garzon that she would have to translate her Spanish-language letters into English if she wished to introduce them as evidence in her proceedings. Because a pro se petitioner like Narvaez-Garzon is presumed to "lack the legal knowledge to navigate [her] way successfully through the morass of immigration law," *Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009), September 6 is the first day Narvaez-Garzon might reasonably have been expected to begin trying to get her documents translated. Narvaez-Garzon testified that from September 6 onwards she put her name down for Otay Mesa's Legal Orientation Program (LOP) "almost every day" to find someone to translate her documents. Because the LOP could not accommodate her, Narvaez-Garzon asked a guard at Otay Mesa for help getting her a slot with LOP—but to no avail. After the September 6 hearing, Narvaez-Garzon also coordinated with a friend to collect Spanish-language documents from Ecuador and Colombia to support her asylum application. This friend continued receiving these documents up until the week prior to Narvaez-Garzon's merits hearing.

1

At the same time, Narvaez-Garzon sought to retain counsel to represent her at her removal proceeding by sending letters to multiple pro bono legal centers, including Casa Cornelia. On October 2, Casa Cornelia told Narvaez-Garzon it could not represent her. That same day, Narvaez-Garzon submitted a pro se motion to continue her hearing. It was her first request for a continuance. Even so, on October 12, roughly five weeks after she first learned that she needed to translate her documents, and only ten days after she submitted her motion for a continuance, the IJ denied her motion.

By denying a continuance and forging ahead with the merits hearing, the IJ violated due process. "A due process violation occurs where (1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting h[er] case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Pangilinan*, 568 F.3d at 709 (internal quotation marks omitted).

As to the first prong, the IJ unreasonably denied Narvaez-Garzon her statutory right to "to present evidence on [her] own behalf," 8 U.S.C. § 1229a(b)(4)(c), and abused her discretion by denying Narvaez-Garzon's motion for a continuance to translate her evidence into English. *See Baires v. I.N.S.*, 856 F.2d 89, 91 (9th Cir. 1988) (denial of a motion for a continuance reviewed for an abuse of discretion). "When evaluating an IJ's denial of a motion for continuance we

2

consider a number of factors—including, for example, (1) the importance of the evidence; (2) the reasonableness of the immigrant's conduct; (3) the inconvenience to the court; and (4) the number of continuances previously granted in the case." *Karapetyan v. Mukasey*, 543 F.3d 1118, 1129 (9th Cir. 2008), *superseded by statute on other grounds as recognized in Owino v. Holder*, 575 F.3d 956, 958 (9th Cir. 2009) (per curiam).

All four factors weigh against the IJ's decision to deny the continuance here. First, the evidence was of critical importance, as it would have corroborated Narvaez-Garzon's testimony and helped establish that she was being persecuted on account of her membership in her family. Second, as explained above, Narvaez-Garzon worked diligently to translate her evidence in the weeks after she first learned this would be necessary. Third, the IJ did not suggest that an initial continuance would inconvenience the court. Finally, Narvaez-Garzon had never before requested a continuance. By unreasonably rejecting this pro se petitioner's first request for a continuance, the IJ "prevented [Narvaez-Garzon] from reasonably presenting h[er] case" and violated due process. *Pangilinan*, 568 F.3d at 709.

Furthermore, Narvaez-Garzon has demonstrated that she was prejudiced by the IJ's decision. To demonstrate prejudice, Narvaez-Garzon need only show that the denial of her motion for a continuance "*may* have" affected the "outcome of

3

[her] proceeding." *Id.* (emphasis added). Narvaez-Garzon readily clears this low bar. Contrary to the majority's unsupported assertion that Narvaez-Garzon's evidence would have been relevant only to her credibility, the record shows that it would also have been relevant to the IJ's alternate finding that Narvaez-Garzon had not demonstrated a nexus between her persecution and a protected social group. Petitioners can successfully demonstrate that they were persecuted *on account of* their family membership by introducing evidence that their family members have been targeted for death. *See Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015) (noting that a petitioner can demonstrate a nexus with evidence that "gang members killed [his] father, murdered his cousin and threatened his sister"). Here, Narvaez-Garzon explained that the evidence she wished to translate would show that "that lots of my family have been killed in my country, [and] where my daughter was kidnapped last year in Ecuador." In addition, her motion for a continuance describes one piece of evidence she sought to get translated as "a letter from the government of Colombia that states we have to ask for protection to Metropolitan Police of Colombia," which suggests that the Colombian government recognized that her entire family was being targeted. Because Narvaez-Garzon's evidence "may have" rebutted the IJ's alternate nexus finding, and therefore "may have" changed the outcome of her proceedings, she was prejudiced by the IJ's due process error. *See Pangilinan*, 568 F.3d at 709.

4

The majority suggests this is irrelevant because Narvaez-Garzon failed to challenge the IJ's nexus finding before this Court. In determining whether a due process error prejudiced a petitioner, however, we do not limit ourselves to the arguments she has preserved on appeal. Rather, we look to the full set of arguments she could have raised before the IJ. *See Jacinto v. I.N.S.*, 208 F.3d 725, 728 (9th Cir. 2000) (explaining that "[p]rejudice occurs when the rights of the alien have been transgressed in such a way as is likely to impact the results of *the proceedings*," and analyzing only "the proceedings" that occurred before the IJ (emphasis added)). In *Zolotukhin v. Gonzales*, we concluded that even though the record at the time of appeal supported the BIA's denial of relief and that therefore the petitioner could not prevail on any arguments directly attacking the merits of the BIA's decision, the IJ's due process errors were sufficiently prejudicial as to require remand for a new hearing. 417 F.3d 1073, 1077 (9th Cir. 2005); *see also Grigoryan v. Barr*, No. 16-73652, 2020 WL 2845730, at *5 (9th Cir. June 2, 2020) (explaining that when a petitioner can prevail on his due process claim, we need not address any challenges to the merits of the order of removal). Narvaez-Garzon's due process claim merits remand irrespective of her ability to successfully attack the other aspects of the BIA's removal order.

To avoid addressing the strength of Narvaez-Garzon's due process claim head on, the majority hides behind a quote from an out-of-circuit case from over

three decades ago in which then-Judge Scalia explained that judges are "arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983). Just so. The question of "whether the IJ . . . den[ied] Petitioner due process" is quite literally a question presented in Narvaez-Garzon's Opening Brief, and her brief puts forth her argument on this issue. Although it is true that her brief could have done more to articulate her argument, Judge Scalia advised that "we are not precluded from supplementing the contentions of counsel through our own deliberation and research." *Id.* This is wise counsel. If judges were limited to considering only those arguments that had been *expertly* argued in the briefs, in many cases we would be left with very few arguments to consider at all. Furthermore, contrary to the majority's suggestion that the government had no opportunity to adequately address the due process arguments in this case, the government's Answering Brief dedicates five pages to addressing this issue.

There is simply no good reason for the majority to so narrowly construe Narvaez-Garzon's due process claim. The consequences of a removal order based on an incomplete record can be dire. *See* Sarah Stillman, *When Deportation Is A Death Sentence*, New Yorker (January 8, 2018), https://www.newyorker.com/ magazine/2018/01/15/when-deportation-is-a-death-sentence. Adhering to due process safeguards helps prevent IJs from erroneously ordering the removal of

6

someone otherwise eligible for relief. Given Narvaez-Garzon testified that she was raped, her daughter abducted, and her family targeted for death in her country of origin, the IJ's disregard for the petitioner's right to due process may result in grievous consequences here.

I would therefore grant the petition.